JOHN P. O'NEIL ET AL. V. STATE OF NEBRASKA.

FILED MARCH 8, 1906.   No. 14,441.

1. **Intoxicating Liquors: UNLAWFUL SALE: EVIDENCE.** Where in a prosecution for a violation of the provisions of section 20, ch. 50, Comp. St. 1905, entitled "Liquors," intoxicating liquor is found and seized in the possession of the accused, or is shown to have been in his possession and kept by him at his place of business, by other competent evidence, the statutes make such possession, when not satisfactorily explained, presumptive evidence of guilt, and such possession and keeping may be sufficient to sustain a conviction. *Peterson v. State,* 63 Neb. 251.

2. ——: ——: ——. It is not every kind of possession of intoxicating liquor, however, that raises the presumption that it was kept for an unlawful purpose; and when the evidence on the part of the prosecution shows that the liquor in question was not kept by the accused, and that his possession of or connection with it was of such a nature that he could not have sold or disposed of it unlawfully, and that such liquor, when seized, was not in his possession, but was rightfully in the possession of another, such evidence alone will not sustain a conviction.

ERROR to the district court for Boone county: JAMES N. PAUL, JUDGE. *Reversed.*

*James A. Armstrong* and *Critchfield & Reid,* for plaintiffs in error.

*Norris Brown, Attorney General,* and *W. T. Thompson,* contra.

BARNES, J.

John P. O'Neil and Burch A. Baldwin were tried in the district court for Boone county on an information charging them jointly with a violation of the provisions of section 20, ch. 50, Comp. St. 1905, in manner as follows: "That the defendants, John P. O'Neil and Burch A. Baldwin, on the 28th day of June, 1904, in the county of Boone, and state of Nebraska, then and there being, did then and there, in the city of Albion, in said county and

state, keep and have in their possession, in a certain coal shed, then and there located upon the Union Pacific railroad right of way in said city, county and state, certain vinous and intoxicating liquors, to wit, two barrels of wine, with the unlawful intent of them, the said John P. O'Neil and Burch A. Baldwin, of unlawfully disposing and selling the same without having first obtained a license or a druggist's permit therefor." The trial resulted in a conviction, and they were each sentenced to pay a fine of $200, together with the costs of the prosecution, and to stand committed to the jail of Boone county until said fine and costs were paid. To reverse said judgment they bring the case here by petition in error, and will hereafter be called the plaintiffs.

Among the numerous errors assigned, it is contended by the plaintiffs that the trial court erred in overruling their motions to direct the jury to return a verdict of not guilty in their favor, and in refusing to so instruct the jury, because the evidence was insufficient to sustain a conviction. All of the testimony is before us in the form of a bill of exceptions, and it discloses the following undisputed state of facts: The plaintiffs were copartners as retail druggists, and their place of business was situated on Fourth street, in the city of Albion, in said county. On the evening of the 27th day of June, 1904, there came to the depot of the Northwestern Railway Company, in said city, two barrels of wine, consigned to the plaintiffs, upon which the charges of the common carrier for transporation were unpaid. The agent of the company delivered the consignment in question to a drayman, doing business in that city, together with a statement of the charges thereon, with instructions to deliver the liquor to the plaintiffs on the payment of the said charges. It appears that the plaintiffs had theretofore rented a bin in a coal shed, situated upon the Union Pacific Railroad Company's right of way, and were using the same as a sort of warehouse; that the drayman to whom the agent of the railroad company delivered the liquor had a key

to this so-called warehouse; that at the general direction of one of the plaintiffs he placed the liquor therein and on the following morning called upon the plaintiffs, presented the expense bill, informed them that he had placed the wine in the warehouse, and demanded payment thereof. They objected to the expense account, and refused to accept the consignment. As soon thereafter as the drayman could conveniently do so, he informed the agent of the railroad company of the situation, and was directed by him, as was his duty, to return the liquor to the depot. He thereupon went to the so-called warehouse or coal bin, loaded the barrels of wine in question upon his dray, drove to the depot, and turned them over to the railway company. Shortly afterwards the wine in question was seized by the officer charged with the arrest of the plaintiffs upon a complaint which was the basis of the information above quoted.

The evidence shows, without question, that it was the custom of the agent of the railway company to entrust all consignments of freight to the aforesaid drayman for delivery to the consignees, with instructions, in case the expense bills and charges for transportation thereof were not paid, to return the goods to the railway company by 10 o'clock on the following day. It was not shown that plaintiffs ordered the consignment of liquor from any one, or that they had paid anything therefor. The only possession of the wine they ever had was, at most, a mere joint constructive possession thereof with the drayman during the time it was in the warehouse or coal bin. It was subject, all of the time, to the control of the drayman, with power on his part to return it to the railroad company in case the charges thereon were not paid.

The state contends that the provision of the statute which makes the possession of intoxicating liquors presumptive evidence of the violation of section 20 of the act in question, and subjects the person so found in possession thereof to the fine prescribed in section 11 of

the act, unless, after examination, he shall satisfactorily account for and explain the possession of such liquor, and that it was not kept for an unlawful purpose, when applied to the evidence in this case, requires us to sustain the judgment of the trial court. In support of this contention, the attorney general cites the case of *Holt v. State,* 62 Neb. 134. An examination of that case discloses that a traveling salesman of a South Omaha liquor house took an order from defendant Holt, in Grand Island, for a gallon of whiskey, collected the price thereof, and agreed to ship the same to him at said last named place; that he transmitted the order to his house, where the whiskey was put up in a suitable package and delivered to the railroad company, addressed and consigned to Holt, as per the agreement, with all charges for transportation prepaid. When the liquor arrived in Grand Island, a complaint was filed against the salesman, charging him with having sold the liquor to Holt in that city without a license or permit. A trial resulted in a conviction. The case was brought to this court by petition in error, where the judgment was reversed, it being held that the sale was made in South Omaha by the wholesale liquor house, and not by its traveling salesman in Grand Island.

In the case at bar, there is no testimony showing a sale of the wine in question, and it appears that the carrying charges against the same were not paid, so that the railroad company was entitled to the possession of it, until its carrier's lien for such charges was satisfied. It never waived its lien, and if it ever relinquished possession of the goods, which is a matter of doubt, it at once regained the same. *Peterson v. State,* 64 Neb. 875, and *Peterson v. State,* 63 Neb. 251, are also cited by the state, and it is contended by the attorney general that, under the rule announced in those cases, the conviction herein should be sustained. In one of them the evidence showed beyond question that intoxicating liquors were kept by the defendant in his place of business, so that the presumption contended for by the state obtained; while in the

other the possession of the liquor and the sale of it was admitted, and it was sought to justify the same or defend against the charge on the ground that the seller was the agent of a social club, and sold the liquor to members of the club only. So the authorities cited are of no assistance to us in this case.

In the case at bar it must be conceded that whatever posession the plaintiffs may have had of the wine in question, it was not such a possession as could be designated a keeping of it; or, in other words, they cannot be said to have kept it either at their place of business or elsewhere; while the facts in evidence show they could not have sold, or otherwise disposed of it, and could have formed no purpose of so doing either in a lawful or unlawful manner. No search warrant was ever issued in this case, and no intoxicating liquor was found in the plaintiffs' possession. The evidence shows that, when the liquor in question was seized, it was not in their possession, but in the possession of the railroad company. No evidence was offered or received showing or tending to show that the plaintiffs had any other intoxicating liquor in their possession at or about the time charged in the information, or that they ever were engaged in the sale thereof. The state's evidence satisfactorily explained whatever possession the plaintiffs had of the consignment of liquor in question and was sufficient to rebut the presumption invoked by the prosecution.

The district court therefore erred in overruling the plaintiffs' motions, and in refusing to instruct the jury to render a verdict in their favor of not guilty. This conclusion renders it unnecessary for us to discuss, examine or determine any of the other assignments of error, and, for the foregoing reason, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.